**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
                                       :

MERITAGE DATA INC.                  :      **Civil Action No. 15-cv-3610**
                                       :

               Plaintiff,       :
                                       :

          v.                   :
                                       :

MD INSIDER, INC,                 :
                                       :

               Defendant.     :
                                       :
-----------------------------------------------------------------------x

## REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

Robert Matthew Travisano
Epstein Becker & Green, P.C.
One Gateway Center
13th Floor
Newark, NJ 07102

Richard D. Gallucci (pro hac vice)
Neal R. Troum (pro hac vice)
Spector Gadon & Rosen, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA 19103

Attorneys for Plaintiff, Meritage Data Inc.

## <u>TABLE OF CONTENTS</u>

Table of Authorities ......................................................................................................... ii

I.      Introduction ............................................................................................................1

II.     Argument   ..............................................................................................................1

        A.      Meritage Was Authorized to License CMS Data to
                Third Parties for Commercial Use .............................................................1

        B.      MD Insiders Averment That it Received No Additional Data from Meritage is
                Inaccurate Based on Email Communications Between the Parties ........................3

        C.      Any Claim By MD Insider That It Had No Knowledge of the Actions of its Own
                Employee or the Relationship Between David Brosso and Mark Brosso is
                Contradicted by Documentary Evidence ...................................................3

        D.      Any Delay in the Current Injunction Application Was the Result of the Parties'
                Efforts to Reach an Amicable Resolution of the Dispute ........................................5

III.    Conclusion   ............................................................................................................6

## <u>TABLE OF AUTHORITIES</u>

*American Direct Marketing, Inc. v. Azad Intl., Inc.*
    783 F. Supp. 84, 91 (E.D.N.Y. 1992) ...............................................................................5

*Barr Rubber Products Co. v. Sun Rubber Co.*,
    425 F.2d 1114, 1120 (2d Cir. 1970)................................................................................4

*Nat. Ass'n v. Glen Fall Nat. Bank and Trust Co.,*
    903 F. Supp. 335, 339 (N.D.N.Y. 1995) .........................................................................5

I.      INTRODUCTION.

In its opposition to Plaintiff's motion for a preliminary injunction, Defendant MD Insider makes various claims which are unsubstantiated by the record evidence.  First, Meritage received all the necessary licenses and authorizations for use of data obtained from the Centers for Medicare and Medicaid Services ("CMS") including: (1) releasing the data to third-parties; (2) using the data to create a commercial tool; and (3) marketing the data to make a profit. Second, there is no question that MD Insider requested and Meritage provided additional licensed data. Third, any claim that MD Insider was unaware of the relationship between David Brosso and Mark Brosso or the actions of its employee are without merit and contrary to the documentary evidence.  Finally, any minor delay in filing the current injunction application was a result of the parties' efforts to resolve this dispute and may not be grounds to deny the application.

II.     ARGUMENT.

     A.      **Meritage Was Authorized to License CMS Data to Third Parties for Commercial Use.**

Contrary to Defendant MD Insider, Inc.'s ("MD Insider") assertions Meritage received all the necessary licenses and authorizations for use of data obtained from the Centers for Medicare and Medicaid Services ("CMS") including: (1) releasing the data to third-parties; (2) using the data to create a commercial tool; and (3) marketing the data to make a profit. See accompanying Supplemental Declaration of Mark Brosso ("Brosso Supp. Decl."), ¶3 .

The CMS Data Use Agreement ("DUA") at issue is DUA No. 27340.  This DUA became effective on September 26, 2014. In order to be able to provide MD Insider, a third-party, with any of the data acquired from CMS, Meritage made the additional and required applications to CMS.  Brosso Supp. Decl., ¶¶4-5, and Exhibit A attached thereto.

Specifically, the DUA application accurately represented that the purpose of the request

was to conduct statistical analysis for public reporting, that the data would in fact be released to a third-party, that it would be used to create a commercial tool and that the data would be marketed to make a profit.  Id. ¶6, Exhibit A.  In order allow MD Insider to use the data and to received, Meritage updated DUA No. 27340 listing MD Insider at MD Insider's address in Santa Monica, California as a custodian and recipient of the CMS data.  attached hereto.  Sharon Kavanagh remained as the CMS contact person.    Indeed, the only reasons MD Insider was listed as a custodian was because it was necessary in order for MD Insider to be a recipient of the data. Id. ¶¶7-8, Exhibit B.

Thereafter, DUA No. 27340 was amended by way of Attachment B which expressly states in Section A-1 that "Users may disseminate research findings on providers or suppliers (including individual physicians) using **original** or derived information the files specified in Section 5 of the DUA."  Attachment B further states, "Nothing in the DUA . . . prohibits Users from discussing or reporting on specific providers or suppliers (including individual physicians) in a manner consistent with A-1." Id. ¶¶7-8, Exhibit C.  Accordingly, MD Insider's claim that Meritage lacked the ability to license the data to a third party is without merit.

Moreover, MD Insider's claim that Meritage lacked the ability to grant licenses for use of the CMS data to a third party is undermined by its own actions.  On March 25, 2015, David Norris, CEO of MD Insider, sent an email to Mark Brosso of Meritage attaching a First Amendment to the Data Licensing Agreement between MD Insider and Meritage as well as a personal guaranty to be signed by Mark Brosso.  According to MD Insider the personal guaranty was necessary because Meritage was a small company and MD Insider wanted to insure Meritage could meet its obligations in connection with the provision of the data.  Meritage did

not sign the first Amendment or the Guaranty.  Brosso Supp. Decl., ¶¶15-16, and Exhibit G attached thereto.

If MD Insider truly believed Meritage lacked the ability to license the data to a third party, it seems odd it would seek to have the Data Use Agreement amended as no amendment would cure this defect.  The likely fact is that the alleged license issue was merely a pretext designed to avoid making payment to Meritage.

**B.**   **MD Insiders Averment That it Received No Additional Data from Meritage is Inaccurate Based on Email Communications Between the Parties.**

MD Insider claims that in never requested, received, or disclosed any additional licenses data provided by Meritage.  Notably, however, this supported by Kingshuck Chatterjee's declaration in opposition to Meritage's injunction application is contradicted by email communications.  Brosso Supp. Decl., ¶11.  Indeed, in a series of emails between January 12, 2015 and February 5, 2015, Mr. Chatterjee expressly requested additional data from Meritage and Meritage in fact agreed to provide it.  Brosso Supp. Decl., ¶12, Exhibit D.  Accordingly, as set forth in Meritage's previously filed motion for a preliminary injunction, not only did MD Insider receive the Additional Licensed Data from Meritage, but it was disclosed to at least one third-party, namely, IMS Health.

**C.**   **Any Claim By MD Insider That It Had No Knowledge of the Actions of its Own Employee or the Relationship Between David Brosso and Mark Brosso is Contradicted by Documentary Evidence.**

Any claim that MD Insider had no knowledge of the relationship between its employee David and Brosso and Mark Brosso of Meritage or that it lacks knowledge as to any agreements reached by David Brosso or Mark Brosso is further contradicted by the communications between the parties.

On March 11, 2015 David Brosso sent an email to MD Insider's Chief Executive Officer David Norris and Chief Financial Officer Jordan Possell related to a due diligence teleconference where MD Insider will request answers to the following questions: (1) What is the structure of Meritage? (2) What is the ownership of Meritage? (3) Is the data licensed to MDI covered under a valid data use agreement? and (4) does the data use agreement allow Meritage to license data to other entities?  Brosso Supp. Decl., ¶13, Exhibit E.

Then, on March 20, 2015, CEO David Norris wrote to Mark Brosso of Meritage via email stating, "Hi Mark, … I have been getting updates **from the team** and would enjoy chatting."  Id. ¶14, Exhibit F (Emphasis added).  Thereafter, as set forth above, on March 25, 2015, David Norris, CEO of MD Insider, sent an email to Mark Brosso of Meritage attaching a First Amendment to the Data Licensing Agreement between MD Insider and Meritage as well as a personal guaranty to be signed by Mark Brosso.  Id. ¶15, Exhibit G.  For MD Insider to claim it lacked knowledge of the relationship between David Brosso and Mark Brosso, or that it did not know what David Brosso was doing, is wholly disingenuous in light of these email communications.

Further, MD Insider is essentially claiming that Dave Brosso, Mark Brosso, and Kevin Jones, a non-party and officer of IMS Health, were engaged in some form of conspiracy to defraud MD Insider.  See Declaration of Shannon Turner in Opposition to Motion for Preliminary Injunction, Exhibits A, B, C, and D.  This assertion is not only without merit but as a non-party has now been accused of conspiracy to commit fraud, it underscores the need for expedited discovery as fraud of any kind must be proven by clear and convincing evidence.  See *Barr Rubber Products Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1120 (2d Cir. 1970) ("[T]here is ample authority of long standing that to substantiate charges of fraud or of undue influence, at

least in actions seeking the recovery of monies paid or the rescission or cancellation of contracts, a litigant must present 'clear and convincing proof").  Indeed, since MD Insider is claiming fraud as a reason the Court should deny the remedy of injunctive relief, the Court should have the benefit of testimony under oath of the accused non-party before rendering a decision as to the merits of MD Insiders claim.

      **D.**      **Any Delay in the Current Injunction Application Was the Result of the Parties' Efforts to Reach an Amicable Resolution of the Dispute.**

MD Insider claims that Meritage is unable to demonstrate the requisite irreparable harm based on its delay and filing its motion for injunctive relief.  MD Insider conveniently ignores the fact that the parties' efforts to amicably resolve this dispute was the cause for any delay. Indeed, any delay in Meritage's decision to seek injunctive relief was based solely on MD Insider's purported desire to amicably resolve the issues between the parties without resort to litigation. Meritage expended over $5,000 in legal fees solely in efforts to resolve the current dispute prior to resorting to litigation.  Brosso Supp. Decl. ¶18.

Thereafter, as this Court is aware, the parties attempting to resolve this very application for injunctive relief by way of consent order.  These efforts were unsuccessful because despite MD Insider's claim to this Court that it is not using any of the data provided to it by Meritage, it could not, and would not, agree to injunctive relief that would prohibit MD Insider from using the data it purportedly was not using.

Moreover, as other courts in this Circuit have found, "'delay while reasonable attempting to settle the matter out of court does not undercut preliminary injunctive relief.'" *Trustco Bank, Nat. Ass'n v. Glen Fall Nat. Bank and Trust Co.,* 903 F. Supp. 335, 339 (N.D.N.Y. 1995) (quoting *American Direct Marketing, Inc. v. Azad Intl., Inc.* 783 F. Supp. 84, 91 (E.D.N.Y.

1992)).  Here, the short delay was wholly caused by efforts to resolve this matter without resort to litigation and this short delay based on such efforts is not grounds to deny injunctive relief.

## IV.     CONCLUSION.

For the foregoing additional reasons and those set forth in its motion for preliminary injunction previously filed with the Court, Meritage respectfully requests that the Court (1) enter a preliminary injunction barring MD Insider from making any use of anything it has received from Meritage and from disclosing to any third party anything it has received from Meritage, and (2) grant limited discovery relating to same.

Dated:  August 25, 2015

Respectfully submitted,

/s/ Robert M. Travisano
Robert Matthew Travisano
Epstein Becker & Green, P.C.
One Gateway Center
13th Floor
Newark, NJ 07102
(973) 642-1900
Fax: (973) 642-0099
rtravisano@ebglaw.com

Richard D. Gallucci (pro hac vice)
Spector Gadon & Rosen, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA 19103
(215) 241-8870
Fax:  (215) 241-8844
rgallucci@lawsgr.com, ntroum@lawsgr.com

Attorneys for Plaintiff, Meritage Data Inc.

**<u>Certificate of Service</u>**

I, Robert M. Travisano, hereby certify that Plaintiff's Reply Brief in Further Support of

Plaintiff's Motion for Preliminary Injunction was filed via the Court's ECF electronic filing

system, which served it on all counsel of record:

Kevin M. Sadler
Shannon Turner
Baker Botts L.L.P.
1001 Page Mill Road, Building One, Suite 200
Palo Alto, CA 94304
(650) 739-7518
Fax: (650) 739-7618
Email: kevin.sadler@bakerbotts.com
shannon.turner@bakerbotts.com


By: <u>/s/ Robert M Travisano</u>
Robert M. Travisano

Date:  August 25, 2015.