# EXHIBIT "A"

Form used Flag 7/17/2014 ...................... (Research Identifiable Data/Fee-for-Service) ..............

**PROJECT INFORMATION**

| Project Name: | Amalgam Data - Facility and Provider Data Analysis | | | | |
|---|---|---|---|---|---|
| Existing DUA # (if update request) (to be completed by requestor) | | | | | |
| CMS Control Number (to be filled by CMS): | | | DUA Number (to be filled by CMS): | | |

| (1) Project Contact: | | | | | |
|---|---|---|---|---|---|
| Name: | Mark Brosso | | | | |
| Title: | President | | | | |
| Organization: | Meritage Data | | | | |
| Address: | 1075 Maple Hill Ln | | | | |
| City: | Malvern | State: | PA | Zip Code: | 19355 |
| Telephone: | 610-246-4244 | | | Fax: | |
| Email: | markbrosso@meritagedata.com | | | | |

| (2) User | | | Same as (1)? | | Yes |
|---|---|---|---|---|---|
| Name: | Mark Brosso | | | | |
| Title: | President | | | | |
| Organization: | Meritage Data | | | | |
| Address: | 1075 Maple Hill Ln | | | | |
| City: | Malvern | State: | PA | Zip Code: | 19355 |
| Telephone: | 610-246-4244 | | | Fax: | |
| Email: | markbrosso@meritagedata.com | | | | |

| (3) Custodian (person who signed DUA #15): | | | Same as (1) or (2)? | | Same as (1) |
|---|---|---|---|---|---|
| Name: | Mark Brosso | | | | |
| Title: | President | | | | |
| Organization: | Meritage Data | | | | |
| Address: | 1075 Maple Hill Ln | | | | |
| City: | Malvern | State: | PA | Zip Code: | 19355 |
| Telephone: | 610-246-4244 | | | Fax: | |
| Email: | markbrosso@meritagedata.com | | | | |

**PURPOSE OF REQUEST** (select one of the permitted uses listed below):

| | |
|---|---|
| | Analyzing provider payments |
| | Commenting on CMS regulations |
| | Conducting quality or access to care projects |
| X | Conducting statistical analysis for public reporting |

**Additional Information**

| Yes | Will any data be released to a third party? |
|---|---|
| Yes | Will data be used to create a commercial tool? |
| Yes | Will you market the data to make a profit? |

If you answered 'yes' to any of the above, you must clarify them in detail in the research protocol/application.

# EXHIBIT "B"

| | |
|---|---|
| DUA #: | 27340 |
| Study Name: | MERITAGE DATA - FACILITY AND PROVIDER DATA ANALYSIS |
| Category: | 51 - LIMITED DATASETS (LDS) |
| Encryption: | L - LIMITED DATASET |
| Authorization: | PA03-RES - RESEARCH RU |
| Privacy Board Approval Date: | |

| | | | |
|---|---|---|---|
| DUA Effective Date: | 09/26/2014 | DUA Expiration Date: | 09/26/2015 |
| Extension: | 0 | Extension Date: | |
| DESY Access: | No | DESY Expiration Date: | |
| Reuse: | No | Reuse Information: | NUL |
| DSAF Access: | No | CMS Data Center Access: | No |
| Foreign Tape: | No | | |
| Bene Notification: | N - NOT APPLICABLE | | |
| Contract/Grant No.: | | | |
| Part D Approval Date: | | | |
| CMS Contact Name: | SHARON KAVANAGH | | |
| Non-CMS Federal Sponsors Email: | | | |

**Data Descriptions:**

#1 Data Description: ASC-FR - LDS - AMBULATORY SURGICAL CENTER, FINAL

| From Year: | 2014 | To Year: | 2014 |
|---|---|---|---|

#2 Data Description: ASC-PR - LDS - AMBULATORY SURIGICAL CENTER, PROPOSED

| From Year: | 2014 | To Year: | 2015 |
|---|---|---|---|

#3 Data Description: CARR5 - CARRIER STANDARD ANALYTICAL FILE 5%

| From Year: | 2011 | To Year: | 2013 |
|---|---|---|---|

#4 Data Description: DENOM - DENOMINATOR FILE

| From Year: | 2011 | To Year: | 2013 |
|---|---|---|---|

#5 Data Description: IPFPPS - LDS - INPATIENT PSYCHIATRIC PROSPECTIVE PAYMENT SYSTEM

| From Year: | 2012 | To Year: | 2012 |
|---|---|---|---|

#6 Data Description: MED-F - LDS - MEDPAR HOSPITAL FINAL

| From Year: | 2013 | To Year: | 2013 |
|---|---|---|---|

#7 Data Description: MEDLTC - MEDPAR - LONG-TERM CARE HOSPITAL - PPS EXPANDED MODIFIED

| From Year: | 2012 | To Year: | 2013 |
|---|---|---|---|

#8 Data Description: OPPSLD - DO NOT USE - LDS - SEE HOPPSF - HOSPITAL OPPS FINAL

|  | From Year: | 2014 | To Year: | 2014 |
|---|---|---|---|---|
|  | From Year: | 2015 | To Year: | 2015 |

#9 Data Description: SAF5DM - MEDICARE INFORMATION ON DURABLE MEDICAL EQUIPMENT PROVIDED.

| From Year: | 2011 | To Year: | 2013 |
|---|---|---|---|

#10 Data Description: SAF5SN - MEDICARE INFORMATION ON SKILLED NURSING FACILITY SERVICES.

| From Year: | 2012 | To Year: | 2012 |
|---|---|---|---|

#11 Data Description: SAFHHP - LDS - SAF 100% - HOME HEALTH AGENCY

| From Year: | 2011 | To Year: | 2013 |
|---|---|---|---|

#12 Data Description: SAFHSP - LDS - SAF 100% - HOSPICE

| From Year: | 2011 | To Year: | 2013 |
|---|---|---|---|

#13 Data Description: SAFIPP - LDS - SAF 100% - INPATIENT

| From Year: | 2011 | To Year: | 2013 |
|---|---|---|---|

#14 Data Description: SAFOPP - LDS - SAF 100% - OUTPATIENT

| From Year: | 2011 | To Year: | 2013 |
|---|---|---|---|

#15 Data Description: SAFSNP - LDS - SAF 100% - SKILLED NURSING FACILITY

| From Year: | 2011 | To Year: | 2011 |
|---|---|---|---|
| From Year: | 2013 | To Year: | 2013 |

#16 Data Description: SNFEXM - SKILLED NURSING FACILITY EXPANDED MODIFIED MEDPAR

| From Year: | 2012 | To Year: | 2013 |
|---|---|---|---|

#17 Data Description: XWALKL - LDS - PHYSICIAN NPI_UPIN CROSSWALK

| From Year: | 2012 | To Year: | 2012 |
|---|---|---|---|

**IDR Custodians:**

**Requestor:**

Address ID: 36827       Contact Info: MARK BROSSO
                        MERITAGE DATA
                        1075 MAPLE HILL LANE
                        MALVERN, PA 19355
                        UNITED STATES OF AMERICA
                        Phone: 610-246-4244
                        Email: markbrosso@meritagedata.com
                        Last Modified: 2015-05-05 10:34:19

**Custodians:**

#1 Address ID: 36826    Contact Info: DAVID BROSSO
                        MD INSIDER
                        604 ARIZONA AVENUE
                        SANTA MONICA, CA 90401
                        UNITED STATES OF AMERICA

Phone: 610-310-5055
Email: david.brosso@mdinsider.com
Last Modified: 2015-05-05 10:23:56

**Subcontractors:**

None

**Recipients:**

#1 Address ID: 36826        Contact Info: DAVID BROSSO
MD INSIDER
604 ARIZONA AVENUE
SANTA MONICA, CA 90401
UNITED STATES OF AMERICA
Phone: 610-310-5055
Email: david.brosso@mdinsider.com
Last Modified: 2015-05-05 10:23:56

# EXHIBIT "C"

Limited Data Sets

DUA #: 27340

## Attachment B

This attachment supplements the above-referenced Data Use Agreement (DUA) between the Centers for Medicare and Medicaid Services and the User (as set forth in the DUA). Upon execution by both parties, to the extent this Attachment is inconsistent with any terms in the DUA, this Attachment modifies and overrides the DUA.

A-1. Use of Data: Users may disseminate research findings on providers or suppliers (including individual physicians) using original or derived information from the files specified in Section 5 of the DUA provided all findings are limited to patient de-identified data that conform with the HIPAA Privacy Rule's definition of de-identified data at 45 CFR 164.514(b).

A-2. Disclosure of Findings: Nothing in the DUA, including but not limited to Section 8, prohibits Users from discussing or reporting on specific providers or suppliers (including individual physicians) in a manner consistent with A-1.

_____

For: Centers for Medicare & Medicaid Services

MARK BROSSO _____

For: DUA Data Requestor

# EXHIBIT "D"

---------- Forwarded message ----------
From: **Kingshuk Chatterjee** <kingshuk.chatterjee@mdinsider.com>
Date: Mon, Jan 12, 2015 at 12:18 PM
Subject: Re: PxDx DDic
To: "david.brosso@mdinsider.com" <david.brosso@mdinsider.com>, Paul White
<paul.white@mdinsider.com>

DB - thanks. A clarifying question:

For facility "charges" (not paid) - is it = **Claim Total Charge Amount - NCH Professional Component Charge Amount** for both the inpatient and outpatient claims?

Also, for these claims,

- Claim Total **Charge Amount = SUM of $$ values in column 47 (UB-04)** ?
- I don't see the charges by Rev Code, 47.1, 47.2 etc. - can we get those too ? This will help us build the charge masters per Hospital/Facility
- No Payer and Health Plan ID - Fields 50 and 51 (UB-04) - this is useful to build the Provider/Facility to Payer/Plan relationship
- Instead of the County code (County Code from Claim (SSA)), can they give us the MSA code ? Since the ZIP is missing, we cannot get to MSA directly without an additional x-walk.
- Missing PRINCIPAL PROCEDURE CODE - Field 74 of UB-04 - this may be the first procedure mentioned, but it needs to be called out explicitly
- Missing REVENUE CODES & DESCRIPTION - 42/43.1 through 42/43.22 (UB-04)
- Hospital NPI is present, but not the address; possible to uniquely match NPI to an address? If not, then lets get the address as well - fields 1 and 2 in UB-04

In short, since this is based on UB-04 - lets get **ALL** fields, except the patient details for HIPAA compliance.

I am using this link for reference: http://www.ibx.com/pdfs/providers/npi/ub04_form.pdf

Regards//K

On Jan 9, 2015, at 5:39 PM, david brosso <david.brosso@mdinsider.com> wrote:

<Data Licensing Agreement Meritage to MD_Insider_Redlined 2014-12-31EXHIBITS.docx>

--
Regards,
David Brosso
Cell: <u>610-310-5055</u>

---------- Forwarded message ----------
From: **mbrosso** <markbrosso@gmail.com>
Date: Tue, Jan 13, 2015 at 9:39 AM
Subject: Re: PxDx DDic
To: david brosso <david.j.brosso@gmail.com>


DAVE:

See answers below


DB - thanks. A clarifying question:

For facility "charges" (not paid) - is it = **Claim Total Charge Amount - NCH Professional Component Charge Amount** for both the inpatient and outpatient claims?

Also, for these claims,

- Claim Total **Charge Amount = SUM of $$ values in column 47 (UB-04)** ?
- I don't see the charges by Rev Code, 47.1, 47.2 etc. - can we get those too ? This will help us build the charge masters per Hospital/Facility

we should have this in the as it was yellow in the LDS Combine worksheet that is forming the ODS:
(1) REV_CNTR is the Revenue Center Code
(2) REV_CHRG is the Revenue Center Total Charge Amount


- No Payer and Health Plan ID - Fields 50 and 51 (UB-04) - this is useful to build the Provider/Facility to Payer/Plan relationship
- Instead of the County code (County Code from Claim (SSA)), can they give us the MSA code ? Since the ZIP is missing, we cannot get to MSA directly without an additional x-walk.
- Missing PRINCIPAL PROCEDURE CODE - Field 74 of UB-04 - this may be the first procedure mentioned, but it needs to be called out explicitly
- Missing REVENUE CODES & DESCRIPTION - 42/43.1 through 42/43.22 (UB-04)
- Hospital NPI is present, but not the address; possible to uniquely match NPI to an address? If not, then lets get the address as well - fields 1 and 2 in UB-04

In short, since this is based on UB-04 - lets get **ALL** fields, except the patient details for HIPAA compliance.

1

I am using this link for reference: http://www.ibx.com/pdfs/providers/npi/ub04_form.pdf

Regards//K

On Jan 9, 2015, at 5:39 PM, david brosso <david.brosso@mdinsider.com> wrote:

<Data Licensing Agreement Meritage to MD_Insider_Redlined 2014-12-31EXHIBITS.docx>




--
Regards,
David Brosso
Cell: 610-310-5055

2

ⅽ

---------- Forwarded message ----------
From: **mbrosso** <<u>markbrosso@gmail.com</u>>
Date: Thu, Feb 5, 2015 at 4:50 PM
Subject: Re: got time for a quick call? RE shipping out the external HD to MD Insider
To: Paul Baniewicz <<u>pbaniewicz@noetyx.com</u>>
Cc: Dave Brosso <<u>david.j.brosso@gmail.com</u>>


Yeah...perfect...let me know if you can get it out via fedex.  Send it to:

Attn:

Kingshuk Chatterjee
MD Insider, Inc.
604 Arizona Ave.
Santa Monica, CA 90401

On Thu, Feb 5, 2015 at 4:39 PM, Paul Baniewicz <<u>pbaniewicz@noetyx.com</u>> wrote:
The drive has the full delivery of what is on the FTP site.   Both zipped and unzipped.

On 2/5/2015 4:30 PM, mbrosso wrote:

    Paul:

    I think we should send them a full delivery.  Whatever we ftp'd to them...unzipped.  Will all of
    that fit on one drive?  Let me know.  Thanks.

    Mark

    On Thu, Feb 5, 2015 at 3:45 PM, Paul Baniewicz <<u>pbaniewicz@noetyx.com</u>> wrote:

    I have all the files revenue claims codes npi zipped as well as extracted on the drive.  I'll check
    where a FedEx is. I will overnight as soon as I find a location.   Do you have an address?

    On Feb 5, 2015 12:54 PM, "mbrosso" <<u>markbrosso@gmail.com</u>> wrote:
    Paul:

    Hey, I don't want to interrupt your vacation...but we do need to send out a full extract of the
    complete deliverable to MD Insider.  Is that what you have on the external HD?  Or, did you just
    load the revenue tables?  Please let me know.

If this has to wait until you are back home then please let me know that as well.  Thank you.

Mark


--
Paul Baniewicz
*Noetyx*
**Empowering Potential**
13 Summit Square Center, #240
Langhorne, PA 19047
www.noetyx.com
Off:888.349.6047x801
Fax:888.349.6047
EMail:pbaniewicz@noetyx.com
This message is intended only for the named recipient(s) above.
Its content is confidential. If you have received this message by error,
please notify us immediately and delete the original without making
a copy and without disclosing its content

EXHIBIT "E"

avoiding penalties that may be imposed, under the Internal Revenue Code of 1986, as amended, on the taxpayer, and (b) cannot be used or referred to by anyone in promoting, marketing, or recommending a partnership or any other entity, investment plan or arrangement, to one or more taxpayers. Under Circular No. 230, practitioners are permitted to provide written tax advice for one of these purposes only if certain stringent requirements are complied with. If you would like us to provide this type of written tax advice, please contact us and we will be pleased to discuss the matter with you.

**From:** david brosso [mailto:david.brosso@mdinsider.com]
**Sent:** Wednesday, March 11, 2015 6:20 PM
**To:** Jordan Posell; Frank Lauletta
**Cc:** David Norris; Jordan Posell
**Subject:** Re: Meritage Due Diligence

Frank,

Please meet Jordan Posell, MDI's CFO.

He is running the audit for MDI on the Meritage Data Use rights.

You likely already met David Norris when Aileron was negotiating the deal with MDI last spring.

David and Jordan,

Frank and Mark has asked that this due diligence session be conducted in accordance with a session as if MDI was purchasing Meritage.

There are certain protocols for this type of session created so that the trade secrets of the target company are protected while providing the acquiring organization with the information that they require for due diligence.

As such, the relevant materials have been supplied by Meritage for Frank's review.

Frank will attest to certain facts as indicated in the documents.

MDI can provide Frank with the list of questions that they wish to propose for the session.

I previously provided some possible questions, which follow:

1) What is the corporate structure of Meritage?

2) What is the ownership of Meritage?

3) Is the Data Licensed to MDI covered under a valid  Data Use Agreement?

4) Does the Data Use Agreement allow Meritage to License the Data to other entities?

5) Others?

Please arrange a mutually suitable date for the due diligence session.

On Wed, Mar 11, 2015 at 6:00 PM, Jordan Posell
<jordan@fullstackfinance.com> wrote:

What is Frank's email so we can schedule?

**From:** david brosso [mailto:david.brosso@mdinsider.com]
**Sent:** Tuesday, March 3, 2015 8:01 AM
**To:** David Norris; Jordan Posell
**Subject:** Meritage Due Diligence

David and Jordan,

The attorney that represents Meritage Data is Frank Lauletta.

Frank is knowledgeable about medical claims data and this specific data asset, as
he was the counsel for Aileron Solutions (Frank negotiated the initial
Aileron/MDI License Agreement)

Frank is available this Monday to do a cal for the Due Diligence session on the
Meritage Data License to MDI...would that work for your schedules?

Frank requested that you provide the set of questions that you wish to cover in
the due diligence session.

Below are a few obvious questions, so please add to this list as you see fit:

1) What is the structure of Meritage? (LP? LLC?)

2) What is the ownership of Meritage?

3) Is the Data Licensed to MDI covered under a valid  Data Use Agreement?

4) Does the Data Use Agreement allow Meritage to License the Data to other entities?

5) Others?


Thanks

# EXHIBIT "F"

thanks for the note. I have been getting updates from the team and would enjoy chatting.

Are you available around 2pm PT?

David

David Norris
Chief Executive Officer
MD Insider, Inc.

david.norris@mdinsider.com
+1.917.664.2837
Twitter: @David_L_Norris

On Mar 20, 2015, at 11:12 AM, markbrosso <markbrosso@meritagedata.com>
wrote:

Jordan/David:

Can we catch up today?  I continue to get questions from your technology/data
team regarding how to properly use the data -- which in good faith we continue to
answer.  The issue is that I am supplying information in the form of data as well
as business rules and logic (IP that is proprietary to Meritage Data) but the lack of
communication coming from your side continues to be unnerving.  Again, I want
to help MD Insider be successful -- which I can across the data as well as
technology and implementation -- I'm pretty good at this.  But the relationship
needs to involve increased communication not to mention payment.

We should talk -- today.  Thank you.

Mark
610-246-4244

On Fri, Mar 13, 2015 at 7:35 PM, david brosso <david.brosso@mdinsider.com>
wrote:
Jordan,
Do you have the list of questions available?
Frank and Mark need to review these and then we need to lock down the day/time
for the Audit
Thanks,

On Fri, Mar 13, 2015 at 11:25 AM, Jordan Posell <jordan@fullstackfinance.com>
wrote:
Thanks Frank, we will have those to you by end of day.


------------------------------------
Jordan Posell

# EXHIBIT "G"

---------- Forwarded message ----------
From: **David Norris** <david.norris@mdinsider.com>
Date: Wed, Mar 25, 2015 at 6:11 PM
Subject: amendment
To: Mark Brosso <markbrosso@gmail.com>

attached are the proposed amendments that we discussed.

David Norris
Chief Executive Officer
MD Insider, Inc.

david.norris@mdinsider.com
+1.917.664.2837
Twitter: @David_L_Norris

# FIRST AMENDMENT
## TO
## DATA LICENSING AGREEMENT

This First Amendment to Data Licensing Agreement (this "Amendment") is entered into on this [●] day of March, 2015, by and between MD Insider, Inc., a Delaware corporation ("Licensee") and Meritage Data, Inc., a Pennsylvania corporation ("Licensor").

WHEREAS, the parties hereto have entered into that certain Data Licensing Agreement (the "Agreement"), dated as of December 31, 2014, pursuant to which the Licensor agreed to license the Licensed Data to Licensee;

WHEREAS, the parties desire to amend the Agreement in certain respects; and

WHEREAS, pursuant to Section 7.4 of the Agreement, the Agreement may be amended by a written instrument executed by the parties thereto.

NOW, THEREFORE, in consideration of the premises, the terms and provisions set forth herein, the mutual benefits to be gained by the performance thereof and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.  Capitalized terms used herein without definition shall have the respective meanings set forth in the Agreement.

2.  The Agreement is hereby amended as follows:

    a.  Section 4.5 is hereby added to the Agreement, as follows:

        i.  "**4.5   Special Remedies**.  In addition to all other remedies available to Licensee under this Agreement, if at any time during the ten (10) year period following the Effective Date it is determined that Licensor does not have the power and authority to grant the license rights set forth herein, then Licensor shall have a ninety (90) day period to obtain such rights. If Licensor is unable to obtain such rights during such cure period, this Agreement will terminate automatically and Licensor shall pay to Licensee an amount equal to (a) the total payments paid by Licensee hereunder, *minus* (b) an amount equal to 10% of such amount multiplied by the number of full years that have elapsed after the Effective Date.

    b.  Section 7.11 is hereby added to the Agreement, as follows:

        i.  "**7.11   Provider Parent Guaranty**.  No later than three days following the date of this Amendment, Mark Brosso will execute and deliver to Licensee a guaranty guaranteeing the payment and performance obligations of Licensor under this Agreement in substantially the form attached hereto as Exhibit A, and such guarantee shall remain in full force and effect until the tenth anniversary of the Effective Date.  Licensor

1

hereby agrees that the failure to comply with the terms of this <u>Section 7.11</u> shall be deemed to be a material breach of the Agreement."

3.    The Agreement is hereby ratified by each of the undersigned, and the terms and provisions of the Agreement, as amended pursuant to Section 2, shall remain in full force and effect.

4.    From and after the date hereof, each reference to "hereof," "hereunder," "herein," "hereby," "this Agreement" and each other reference of like import in the Agreement shall be deemed to refer to the Agreement as amended pursuant to Section 2 hereof.

5.    Separate counterpart copies of this Amendment may be signed by the parties hereto, with the same effect as though all of the parties had signed one copy of this Amendment.

*[Signature page follows.]*

2

**IN WITNESS WHEREOF**, the parties hereto have executed this Amendment as of the date first set forth above.

**MD INSIDER, INC.**

By:_____
     Name:_____
     Title:_____

**MERITAGE DATA, INC.**

By:_____
     Name:_____
     Title:_____

## GUARANTEE

THIS GUARANTEE, dated as of March [●], 2015 (this "**Guarantee**"), made by Mark Brosso, an individual (the "**Guarantor**"), in favor of MD Insider, Inc., a Delaware corporation ("**Licensee**"), under and in connection with that certain Data Licensing Agreement, dated December 31, 2014 (the "**Original Agreement**"), as amended by the First Amendment to Data Licensing Agreement, dated March [●], 2015 (the "**Amendment**," and together with the Original Agreement, the "**Data Licensing Agreement**"), by and between Licensee and Meritage Data, Inc., a Pennsylvania corporation ("**Licensor**").

WHEREAS, the Guarantor is the founder and President of Licensor, owns a substantial interest in Licensor and will derive substantial direct and indirect benefit from the performance of Licensee under the Data Licensing Agreement; and

WHEREAS, to induce Licensee to enter into the Amendment and perform its obligations under the Data Licensing Agreement for the benefit of Licensor, the Guarantor is entering into this Guarantee.

NOW THEREFORE, in consideration of the premises, the Guarantor agrees for the benefit of Licensee as follows:

## 1. DEFINED TERMS

1.1     Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Data Licensing Agreement.  The following terms shall have the following meanings when used in this Guarantee:

"**Obligation**" means all of the obligations and liabilities (including duties and obligations of performance, monetary obligations and liabilities (including indemnity obligations), and payment of damages and obligations in respect of taxes to the extent provided in the Data Licensing Agreement) of Licensor under the Data Licensing Agreement, whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter incurred, in any currency, in any jurisdiction, that may arise with respect to any obligations and liabilities, and any interest, fees or other costs or expenses payable under or out of the Data Licensing Agreement, but subject to any limitations in the Data Licensing Agreement.

"**Person**" an individual, partnership, corporation, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority or other entity of whatever nature.

## 2. GUARANTEE

2.1     The Guarantor hereby absolutely, unconditionally and irrevocably guarantees to Licensee the prompt and complete performance and payment in full when due by Licensor of all of the Obligations.

2.2     The Guarantor further agrees to pay all reasonable expenses (including all reasonable fees and disbursements of counsel) that may be paid or incurred by Licensee in enforcing any rights with respect to this Guarantee.

**3.     NO SUBROGATION**

3.1     The Guarantor shall not be entitled to be subrogated to any of the rights of Licensee against Licensor for performance or payment made by the Guarantor under this Guarantee, including in respect of any collateral security or guarantee or right of offset held by the Guarantor against Licensor if at the time any Obligations are unpaid or unperformed.

**4.     AMENDMENTS, ETC. WITH RESPECT TO OBLIGATIONS; WAIVER OF RIGHTS**

4.1     The obligations of the Guarantor under this Guarantee shall remain in effect and shall not be diminished or impaired, without any reservation of right against the Guarantor and without notice to or further assent by the Guarantor, notwithstanding:

    (a)     any withdrawal of any demand (including the commencement and continuance of any legal proceedings) by Licensee for payment or performance by Licensor of any Obligations or for payment or performance thereof under this Guarantee;

    (b)     any amendment, extension, modification or waiver of any Obligations;

    (c)     any compromise by Licensee of any Obligations and any other guarantee in respect thereof;

    (d)     any insolvency, bankruptcy, liquidation or dissolution of Licensor or Licensee; or

    (e)     the failure of Licensee:

        (i)  to assert any claim or demand or to enforce any right, remedy or privilege against Licensor, any other obligor or any other Person; or

        (ii) to exercise any right, remedy or privilege against any other guarantor of the Obligations.

4.2     If the Data Licensing Agreement or any portion thereof is declared invalid or unenforceable in any respect, this Guarantee shall remain in effect with respect to the remaining portions of such Data Licensing Agreement.

**5.     GUARANTEE CONTINUING**

5.1     Notwithstanding anything to the contrary contained herein, including pursuant to **Section 3**, the Guarantor waives diligence, presentment and protest or other notice of any kind with respect to all Obligations.   This Guarantee shall be construed as a continuing

guarantee of performance and payment by the Guarantor of all Obligations owing to Licensee by Licensor under the Data Licensing Agreement and not a guarantee of collection.

5.2    When pursuing its rights and remedies under this Guarantee against the Guarantor, Licensee may, but shall be under no obligation to, pursue such rights and remedies as it may have against Licensor or another guarantor, unless and until all the Obligations owing to Licensee shall have been satisfied by performance in full or indefeasible payment in full in cash.  Any failure by Licensee to pursue any rights or remedies, or to collect any amounts from Licensor or another guarantor, shall not relieve the Guarantor from his obligations under this Guarantee.

5.3    This Guarantee shall remain in full force and effect and be binding upon the Guarantor, and shall inure to the benefit of Licensee and the respective successors, transferees and assigns of Licensee (to the extent that the Obligations have been transferred and are owing to such successor, transferee or assignee in accordance with the Data Licensing Agreement), until all the Obligations owing to Licensee and the obligations of the Guarantor under this Guarantee shall have been satisfied by performance in full or indefeasible payment in full in cash.

5.4    This Guarantee shall be construed as a continuing, absolute, unconditional and irrevocable guarantee of performance and payment by the Guarantor of the Obligations and shall remain in full force and effect until all the Obligations owing to Licensee and the obligations of the Guarantor under this Guarantee shall have been satisfied by performance in full or indefeasible payment in full in cash.

## 6.    REINSTATEMENT

6.1    This Guarantee shall be reinstated if at any time any payment, or any part thereof, of any Obligations is rescinded or must otherwise be restored or returned by Licensee, including upon (i) the insolvency or bankruptcy of Licensor or the Guarantor or (ii) the dissolution, liquidation or reorganization of Licensor.

## 7.    PAYMENTS

7.1    The Guarantor agrees that the Obligations owing to Licensee shall be paid to Licensee in U.S. dollars.

## 8.    REPRESENTATIONS AND WARRANTIES

8.1    The Guarantor represents and warrants that:

    (a)    he has the power and authority and the legal right to execute and deliver, and to perform his obligations under, this Guarantee, and this Guarantee has been duly executed and delivered;

    (b)    this Guarantee constitutes a legal, valid and binding obligation of the Guarantor,

enforceable in accordance with its terms, subject to the effects of bankruptcy, solvency, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally and general equitable principles (whether considered in a proceeding in equity or at law);

(c)    the execution, delivery and performance of this Guarantee will not violate or result in a default in any applicable law, rule or regulation or any judgment, order or decree or agreement, instrument or undertaking applicable to the Guarantor and will not result in, or require, the imposition or creation of any lien on any of his properties or incomes pursuant to any of the foregoing;

(d)    no consent or authorization of, or filing or registration with, any governmental authority, and no consent of any other Person, is required in connection with the execution, delivery, performance, validity or enforceability of this Guarantee, other than as may have been obtained or made and is in full force and effect; and

(e)    he is not entitled to immunity from judicial proceedings and agrees that, in the event Licensee brings any suit, action or proceeding to enforce any obligation or liability of the Guarantor arising, directly or indirectly, out of or relating to this Guarantee, no immunity from such suit, action or proceeding will be claimed by or on behalf of the Guarantor.

## 9.    NOTICES

9.1    All notices and demands to or upon Licensee or the Guarantor to be effective shall be in writing (or by telex, fax or similar transmission) and shall be deemed to have been duly given or made

(a)    if delivered by hand, courier or certified or registered mail (return receipt requested), when delivered or

(b)    if by telex, fax or similar transmission, when sent and receipt has been confirmed, addressed as follows:

(i)  if to Licensee, at the address or transmission number for notices provided in the Data Licensing Agreement; and

(ii) if to the Guarantor, at his address or transmission number for notices set forth under his signature below.

Licensee and the Guarantor may change their respective addresses and transmission numbers for notices and demands by giving notice in the manner provided in this Section.

## 10.    AMENDMENTS IN WRITING; NO WAIVER; CUMULATIVE REMEDIES

10.1    None of the terms or provisions of this Guarantee may be waived, amended or otherwise modified except by a written instrument executed by the Guarantor and Licensee.

10.2   Licensee shall not by any act (except by a written instrument pursuant to **Section 10.1)** or by any delay, indulgence or omission be deemed to have waived any right or remedy hereunder.  No failure to exercise, nor any delay in exercising on the part of Licensee, any right, power or privilege hereunder shall operate as a waiver thereof.  No single or partial exercise of any right, power or privilege hereunder shall operate as a waiver thereof.  No single or partial exercise of any right, power or privilege under this Guarantee shall preclude any other or further exercise thereof or the exercise of any other right, power, or privilege.  A waiver by Licensee of any right or remedy on any occasion shall not be construed as a bar to any right or remedy that Licensee would otherwise have on any future occasion.

10.3   The rights and remedies herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any other rights or remedies provided by law.

**11.    DISPUTE RESOLUTION; GOVERNING LAW**

11.1   The provisions of **Sections 5.2** and **7.6** of the Data Licensing Agreement are hereby incorporated by reference into this Guarantee, with all references to Licensor hereby deemed to refer to the Guarantor.

**12.    SUCCESSORS AND ASSIGNS; REPRESENTATIVES**

12.1   This Guarantee shall inure to the benefit of Licensee and its successors and (to the extent permitted under the Data Licensing Agreement) transferees and assigns.  Licensee may be represented in giving any notices or asserting any rights under this Guarantee, by any trustee, agent or other similar representative on its behalf or on its behalf and others and, in such event, each reference to Licensee shall, as appropriate, also be a reference to such trustee, agent or other representative.

**13.    PARTIAL INVALIDITY**

13.1   If any provision of this Guarantee or the application thereof to any person or circumstance shall to any extent be held void, unenforceable or invalid, then the remainder of this Guarantee or the application of such provision to persons or circumstances other than those as to which it is held void, unenforceable or invalid shall not be affected thereby and each provision of this Guarantee shall be valid and enforced to the fullest extent permitted by law.

**14.    CONSIDERATION**

14.1   It is a condition of the grant, execution and delivery of the Amendment that the Guarantor execute and deliver this Guarantee.  The Guarantor acknowledges and agrees that the grant, execution and delivery of the Amendment by Licensor is in the Guarantor's best interests and the Guarantor expects to derive benefit therefrom. The Guarantor makes this Guarantee knowing that Licensee shall rely on this Guarantee in entering into the Amendment. The Guarantor conclusively acknowledges that Licensee's reliance hereon is

in every respect justifiable and the Guarantor received adequate and fair equivalent value for this Guarantee.

[*Signature page follows*]

Mark Brosso

_____

Address for Notices:
[●]

# EXHIBIT "H"

# BAKER BOTTS LLP

| | | |
|---|---|---|
| 1001 PAGE MILL ROAD<br>BUILDING ONE, SUITE 200<br>PALO ALTO, CALIFORNIA<br>94304-1007<br><br>TEL  +1 650.739.7500<br>FAX  +1 650.739.7699<br>BakerBotts.com | AUSTIN<br>BEIJING<br>BRUSSELS<br>DALLAS<br>DUBAI<br>HONG KONG<br>HOUSTON | LONDON<br>MOSCOW<br>NEW YORK<br>**PALO ALTO**<br>RIO DE JANEIRO<br>RIYADH<br>WASHINGTON |

March 27, 2015

Kevin Sadler
TEL: 6507397518
FAX: 6507397618
kevin.sadler@bakerbotts.com

BY FEDEX & EMAIL

Meritage Data, Inc.
c/o Frank Lauletta, Esq.
591 Mantua Blvd #200
Sewell, NJ 08080

Re:     MD Insider Data Licensing Agreement

Dear Mr. Lauletta:

On behalf of our client, MD Insider, Inc. ("MD Insider") I am writing to you in connection with the Data Licensing Agreement (the "Agreement"), dated as of December 31, 2014, between MD Insider and Meritage Data, Inc. ("Meritage"). Capitalized terms not otherwise defined in this letter shall have their respective meanings set forth in the Agreement.

Pursuant to Section 6.2 of the Agreement, this letter shall serve as notice that MD Insider considers Meritage to be in material breach of the Agreement, and that if Meritage does provide not adequate evidence to MD Insider that such breach has been cured no later than April 29, 2015, MD Insider hereby terminates the Agreement as of such date.

As has been discussed by various representatives of the parties, MD Insider has reason to believe that Meritage is in breach of its representation and warranty set forth in Section 2.6.1(i) of the Agreement, which states that "[Meritage] has the power and authority to enter into and perform this Agreement, *including the granting of the license rights set forth herein*" (emphasis added). Despite repeated requests, Meritage has been unable or unwilling provide MD Insider with adequate evidence that Meritage does, in fact, have the authority to grant the licenses under the Agreement. MD Insider does not believe that any such adequate evidence exists, and that Meritage does not have the express authority contemplated by the above-mentioned representation and warranty.

Please be advised that MD Insider has reason to believe that MD Insider was fraudulently induced into entering into the Agreement, through a series of misrepresentations made by and between Mark Brosso and David Brosso, which relate to, among other things (i) the formation

**BAKER BOTTS** LLP

- 2 -                                                                    March 27, 2015

and history of Meritage, (ii) the source of the Licensed Data, (iii) the specific scope of the Licensed Data and (iv) the relationship between Mark Brosso and David Brosso.  In connection with any proceedings related to the Agreement, MD Insider will assert these claims and seek rescission of the Agreement, as well as damages relating thereto.

Based on the above, MD Insider proposes that the parties enter into a termination agreement under which the Agreement will be terminated and the parties will agree to a mutual release of claims.  If Meritage is unwilling to enter into such an agreement, MD Insider hereby invokes the dispute resolution procedures set forth in Section 5.2 of the Agreement, which require the parties to submit to binding arbitration in New York, NY, before a panel of three arbitrators.

I look forward to hearing from you on the above matters at your earliest convenience.

Very truly yours,

Kevin Sadler

KS

cc:    David Norris, Chief Executive Officer, MD Insider
       Brian Lee, Baker Botts